UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

BRANDIS C. RIGGINS, )
)
      Plaintiff, )
  vs. )   No. 1:10-cv-01594-MJD-TWP
)
MICHAEL J. ASTRUE, )
COMMISSIONER OF SOCIAL )
SECURITY )
)
      Defendant. )

# Entry on Judicial Review

Plaintiff Brandis C. Riggins requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Social Security Disability Insurance Benefits ("DIB") under Title II and for Social Security Income ("SSI") disability benefits under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§416(i); 423(d); 1382c(a)(3). The Court rules as follows.[1]

## I. Procedural History

Riggins applied for DIB and SSI on May 2, 2007, alleging a disability onset date of January 18, 2002. Riggins's application was denied initially on July 9, 2007 and on reconsideration on February 20, 2008. Riggins requested a hearing which was held before Administrative Law Judge ("ALJ") Michael Scurry on December 14, 2009. The ALJ denied her application on February 12, 2010. On November 2, 2010, the Appeals Council denied review,

---

[1] The parties consented to the magistrate judge conducting all proceedings and ordering the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

1

making the ALJ's decision the agency's final decision for purposes of judicial review. Riggins filed her Complaint with this Court on December 10, 2010.

## II. Factual Background and Medical History

Brandis Riggins was twenty years old on the date that she filed her claim for disability. Riggins had previously received Title XVI disability benefits as a child, but was found to be no longer disabled as of March 2006 when she was nineteen years old. She has a history of long-standing bilateral sensorineural hearing loss dating back to the third grade, and she has worn hearing aids since the fifth grade. She has a history of prior lead poisoning from her early childhood, and her mother is also hearing impaired and is currently on SSI disability benefits. Although she was prescribed hearing aids for both ears, Riggins testified that she only wears one hearing aid because the other one is broken, and the hearing aid that she does wear in her right ear also malfunctions with "whistling" and feedback.

Riggins is a high school graduate and was enrolled in Kaplan College to become a medical assistant at the time of her application. She had previously attended Ivy Tech College studying medical assisting, but because they were unable to accommodate her hearing impairments she ended up either failing or dropping out of the program. Riggins stated that her instructor at Kaplan College accommodates her hearing impairment, and that her only problem in her current program is difficulty with taking blood pressure because of trouble hearing through stethoscopes. Otherwise she is doing well in her courses and has an overall grade point average of 3.85.

Riggins has some work history since her graduation from high school. She worked at Rally's fast food restaurant as a cashier for approximately four months, but was fired either for having too many incorrect orders or due to transportation problems. She then worked as a

waitress at an Indian restaurant as a server, but was fired after about five months because she repeatedly got customers' orders wrong.  Riggins's next job was working at Taco Bell where she worked for approximately five months before leaving to work at Starbucks because it had better pay and benefits.  Her most recent job was working as a barista at Starbucks where she said she was fired for poor customer service.  She indicated that customers complained that she did not make their drinks correctly and they had to repeat their orders to her.  Riggins testified that her hearing problems made it so she had to ask customers to repeat themselves often and that she worked slowly in filling orders because she wanted to get them right.  She also said she could not hear in noisy environments and that she made the most mistakes when she was unable to read the customers' lips.

    Riggins's daily activities include attending classes, drawing, playing with her nieces and nephews and helping them with their homework, doing her own homework, writing in her journal, grocery shopping, and housework.  She also attends church with her mother and testified that her mother liked to go to the early church service because it had an interpreter for the hearing impaired.  Riggins testified that she has a cell phone and uses it to speak to people for business and school purposes, but she primarily uses text messaging for social purposes.  She said that she could hear the home phone only because her mother has a special telephone designed for people who are hearing impaired that has an extra loud ringer and a mechanism that causes lights in the house to flash.  Riggins testified that she occasionally used her mother's teletype device to communicate with her food stamps counselor, and that she is able to talk on the telephone but prefers not to.  When Riggins does talk on the telephone or her cell phone, she holds it to her right ear where she wears her working hearing aid.  Riggins also watches television with the sound turned up and the closed captioning on.

Riggins has been examined by various professionals over the years for her hearing impairment. In February 2000, Mary Ann Smith, M.S., a psychologist at Riggins's school, evaluated her hearing when she was in the seventh grade as part of a three-year reevaluation from her previous exam in 1996. Riggins had reportedly lost her left hearing aid and only had her right hearing aid for the examination. Riggins reported to Smith that she sat in the front of the class and had no problems with hearing the teacher. In her senior year in 2006, Riggins underwent another evaluation by her school. The report stated that Riggins had moderate sensorineural hearing loss in both ears and a history of seizure disorder with no seizure in over one year. Riggins stated to the evaluator that she utilized extended time and one-on-one help for accommodation in the classroom, but that she did not need any additional assistance. Her individualized education plan indicated that, without hearing aids, Riggins could miss up to 50% of classroom discussion and 70% in noisy environments and that she needed to be able to see the teacher's face to read lips.

In December 2006, Riggins was examined by Dr. Vincent Ostrowski for complaints of decreased hearing. Dr. Ostrowski reported that she had bilateral, severe, symmetric, flat sensorineural hearing loss with normal speech discrimination scores, and that her hearing has remained stable over the years. Riggins complained that the amplification in her hearing aids was underpowered and she did not receive adequate benefit from them. Dr. Ostrowski recommended that Riggins wear behind-the-ear digital hearing aids in both ears and that a cochlear implant was not necessary. In May 2007, Dr. Ostrowski responded to a request for additional information from the state disability determination bureau in which he stated that he would expect that Riggins would have significant impairment in determining environmental and speech sound awareness. He opined that if she were in an area of significant noise, he would

expect that she would have a decreased or absent ability to detect warning sounds of impending self-injury or be able to listen for warning signals. However, he stated that he expected her memory, concentration, and persistence in social interaction and adaptation to be normal so long as background noise was kept to a minimum to allow for direct face-to-face communication, as she would not be able to easily communicate via telephone. Dr. Ostrowski again recommended hearing aid amplification as treatment. Riggins missed two consultative exam appointments with state agency reviewing physician Dr. J.V. Corcoran, thus in July 2007 he opined that there was insufficient evidence in the record for him to make a determination.

On January 17, 2008, Riggins was examined by consulting psychologist Dr. Gregory Lynch, Ph.D. for her hearing impairments and for a psychological evaluation. Riggins claimed that her disability was due to hearing loss. Riggins wore only one hearing aid during the examination because she said the other device was damaged. She reported that she received no medical treatment for her hearing impairment and had no primary physician at that time. Riggins reported to Dr. Lynch that the reason that she left her last job at Rally's was due to transportation problems. Dr. Lynch observed that Riggins had a restricted affect, a somewhat depressed mood, inconsistent insight into her own psychological functioning, and a tendency to vacillate in her decision-making; however, he observed that she had normal attention, concentration, memory, speech, thought content, judgment, and social maturity. He diagnosed Riggins with Anxiety Disorder Not Otherwise Specified ("NOS") and assigned her a fair prognosis.

Riggins was also seen by Dr. Jack D. Summerlin on January 8, 2008 for an ear, nose, and throat exam and audiometrics. On January 29, 2008 he wrote a letter to the state DBB, reporting that Riggins's physical exam was normal, and audiometrics showed moderate to severe

sensorineural hearing loss in both ears with good speech discrimination. Dr. Summerlin reported that hearing aids benefitted Riggins, but that they needed to be repaired or replaced.

On February 20, 2008, state agency reviewing physician Dr. Fernando Montoya completed a physical Residual Functional Capacity ("RFC") Assessment and a Disability Determination and Transmittal Form. He found that Riggins had no exertional limitations, but should not climb ladders, ropes and scaffolds due to her history of seizure disorder. The RFC assessment also states that Riggins should avoid concentrated exposure to noise and hazards, such as machinery and heights, due to her hearing impairment. Dr. Montoya agreed with Dr. Summerlin's assessment of Riggins's hearing impairment and the need for her to get her hearing aids repaired or replaced.

Dr. Kenneth Neville, Ph.D. completed a Psychiatric Review Technique form ("PRTF") in February 2008. He opined that Riggins's psychological impairments moderately limited her social functioning and mildly limited her activities of daily living and her concentration, persistence, or pace. In his Functional Capacity Assessment, Dr. Neville stated that Riggins seemed avoidant and does not like crowds, but otherwise retains the capacity for work type interaction with peers and supervisors. Further, he stated that she seemed capable of tolerating a low stress work setting with minimal contact with the general public.

### III. Applicable Standard

Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous

work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th

Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning ... [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Id.*

## IV. The ALJ's Decision

The ALJ first found that Riggins met the insured status requirements of § 216(i) and 223 of the Act through June 30, 2010 with respect to her claim for a period of disability and DIB, thus she had to prove that she was disabled prior to that date in order to be entitled to a period of disability and DIB.

Applying the five-step analysis, the ALJ found at step one that Riggins had not engaged in "substantial gainful employment" activity since March 2006 because her work activity after that time did not rise to the level of substantial gainful activity under 20 C.F.R. 404.1574 and 20 C.F.R. 416.974.

At step two, the ALJ found that Riggins had the following impairments: bilateral sensorineural hearing loss; history of seizures in remission; anxiety disorder NOS; and obsessive compulsive personality features, and that these impairments more than minimally affected Riggins's ability to perform basic work activities.

At step three, the ALJ determined that Riggins did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ concluded that the evidence of Riggins's bilateral sensorineural hearing loss indicates that it is not severe enough to satisfy the

requirement of Listing 2.08 for a hearing impairment (hearing not restorable by a hearing aid); her history of seizures in remission does not satisfy the requirements of listings 11.02 or 11.03 for convulsive and non-convulsive epilepsy; and her mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.06 or 12.08 for anxiety related disorders and personality disorders. The ALJ found that Riggins has mild restriction in activities of daily living, moderate difficulties in social functioning, mild difficulties with regard to concentration, persistence or pace, and no episodes of decompensation.

The ALJ determined that Riggins had the residual functional capacity to perform a full range of work at all exertion levels, but with the non-exertional limitations of never climbing ladders, ropes, and scaffolding; occasionally climbing ramps and stairs; frequently balancing, stooping, kneeling, crouching, and crawling. He further concluded that Riggins has limited hearing and should avoid concentrated exposure to noise and hazards, can hear and understand instructions and communicate information, and must avoid loud background noise. The ALJ also determined that Riggins can understand, remember and carry out simple, repetitive instructions and maintain concentration, persistence and pace for such tasks, with minimal contact with the general public.

At step four, the ALJ determined that Riggins had no past relevant work because her prior jobs did not meet the level of substantial gainful activity. At step five, the ALJ determined that, considering her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Riggins could perform. Thus, the ALJ determined that Riggins is not disabled under sections 216(i) and 223(d) of the Social Security Act for purposes of DIB, and is not disabled under section 1614(a)(3)(A) for purposes of SSI.

## V. Discussion

Riggins presents three arguments as to why the ALJ's decision was in error and the case should be remanded. Specifically, Riggins claims that the ALJ: (1) erred at step three by failing to summon a hearing specialist to testify as to whether Riggins's hearing impairments medically equaled Listing 2.08; (2) misstated evidence in his RFC finding and step five determination; and (3) made a patently erroneous credibility determination. Although Riggins presented evidence related to mental impairments to the SSA, the focus of her appeal relates to the ALJ's findings with regard to her hearing impairments.

### 1. Failure to Summon an Additional Medical Expert at Step Three

Riggins argues that the ALJ was required to summon a hearing impairment specialist as a medical expert to testify as to whether her impairments medically equaled a listed impairment, and argues that, because no medical expert testified at Riggins's hearing, the ALJ's step three findings were based upon his layman's opinion. Further, Riggins argues that the ALJ did not support his finding that her impairments were not medically equivalent to Listing 2.08 with any evidence or analysis.

The decision to use a medical expert is discretionary; an ALJ may ask for and consider opinions from medical experts on the nature and severity of impairments, but there is no requirement in the regulations that he must do so. *See* 20 C.F.R. 416.927(f)(2)(iii). "If the ALJ believes that he lacks sufficient evidence to make a decision, he must adequately develop the record and, *if necessary*, obtain expert opinions." *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000) (emphasis added).

Listing 2.08 provides as follows:

Listing 2.08 *Hearing impairments* (hearing not restorable by hearing aid) is manifested by:

> A. Average hearing threshold sensitivity for air conduction of 90 decibels or greater and for bone conduction to corresponding maximal levels, in the better ear determined by the simple average of hearing threshold levels at 500, 1,000, and 2,000 hz (*see* 200B.1); or
>
> B. Speech discrimination scores of 40 percent or less in the better ear[.]

20 C.F.R. § 404, Subpart P, Appendix 1. The ALJ's decision cites several sources in the record that provide adequate basis for his conclusion that Riggins's hearing impairment did not meet or medically exceed Listing 2.08 such that summoning an additional expert was not required. [R. 15]. The ALJ cites to several medical records, including Dr. Ostrowski's May 2007 opinion stating that he recommended binaural hearing aid amplification [R. 197]; Dr. Summerlin's January 2008 evaluation stating that Riggins "[u]ses hearing aids right and left with benefit," that such hearing aids need repairs or replacement, and that she has good speech discrimination [R. 234-36]; records from Indiana Hearing Aid Company from consultations with Riggins [R. 243-44]; and results from a July 2009 hearing test indicating that amplification is recommended for Riggins [R. 242]. These records all consistently state that Riggins's hearing is restorable by hearing aids, and the objective test results show that Riggins's hearing does not fall within the ranges listed in Listing 2.08. Furthermore, Dr. Montoya completed a Disability Determination and Transmittal form, which conclusively establishes that a physician designated by the Commissioner has considered the question of medical equivalence.[2] *See* Social Security Ruling 96-6p, 1996 WL 374180 at *3 (July 2, 1996) ("The signature of a State agency medical or psychological consultant on an SSA-831-U5 (Disability Determination and Transmittal Form) … ensures that consideration by a physician … designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review."); *Scheck*, 357 F.3d at 700 (the ALJ may properly rely upon the opinion of medical

---

[2] There were actually two physicians that completed DDT forms; however, Riggins failed to appear at two consecutive appointments with Dr. Corcoran for evaluation so he was unable to provide an opinion. [R. 24].

experts completing DDT forms on the question of medical equivalence). Thus, the Court finds that the ALJ did have substantial evidence to support his conclusion that Riggins's hearing impairment did not meet or medically equal Listing 2.08 and that he was not required to summon an additional expert.

### 2. The ALJ's RFC Assessment and Step Five Determination

Riggins argues that the ALJ failed to give full consideration to all of her evidence showing that she has severe limitations due to her hearing impairment in his step five determination and RFC assessment. She argues that the ALJ misstated and ignored evidence regarding her work history, specifically that he failed to consider evidence that she had significant problems at her various jobs because her hearing impairment led to mistakes and customer complaints. Riggins also argues that the ALJ ignored testimony that she was dismissed from post-high school medical assisting training due to her hearing impairment; that she could not easily communicate on the telephone; that she attended early church service when the interpreter for the hearing impaired was there; and that she had to ask the ALJ to repeat questions during the hearing. Riggins also claims that the ALJ failed to take into account Dr. Ostrowski's assessment that she claims indicates that she is required to have face-to-face communication.

The Court finds that the ALJ did adequately give full consideration to all of the evidence in the record in making his RFC determination, and that Riggins's attempt to focus only on the evidence that she claims demonstrates her disability is unavailing. The ALJ discussed Riggins's entire work history, noting that while she did have difficulties while working at Taco Bell, she also voluntarily left that job for a better position at Starbucks. [R. 20]. He also considered Riggins's statements to Dr. Lynch that she was fired from Rally's not due to too many voided cash register transactions, but due to transportation problems. [*Id.*]. Riggins's assertion that she

required face-to-face communication and that she could not use the telephone misstates evidence considered by the ALJ that Riggins did communicate on her cell phone and telephone for business and school purposes, and that Dr. Ostrowski's opinion does not state that Riggins is required to communicate with people face-to-face in order to read lips. [R. 19-20, 197]. Further, Riggins did not testify that she needed the interpreter at church, but rather her mother liked going to the early service for the interpreter. [R. 273]. Riggins also ignores evidence considered by the ALJ that she is currently doing well in her medical assisting education program despite failing in her previous program. [R. 20]. All of the evidence is consistent with the ALJ's finding that Riggins is limited to jobs where there is no concentrated exposure to noise and hazards and no loud background noise. Therefore, the Court finds that the ALJ reasonably articulated and supported his RFC finding and step five determination with substantial evidence.

### 3. Credibility Determination

Riggins argues that the ALJ's credibility determination is patently erroneous because it is contrary to SSR 96-7p and that he rejected or ignored all evidence of her nonexertional hearing-communication impairments. As part of his RFC determination, the ALJ found that Riggins's statements concerning intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with the ALJ's RFC finding. Riggins does not articulate in her brief how the ALJ failed to apply the seven factors of SSR 96-7p. SSR 96-7p requires that the ALJ consider an individual's statements about the intensity and persistence of symptoms or about the effect the symptoms have on her ability to work within the context of the entire record and may not disregard them solely because they are not substantiated by objective medical evidence. SSR 96-7p, 1996 WL 374186 (July 2, 1996).

As discussed above, the ALJ adequately considered all of the evidence in the record in making his credibility determination. [R. 16-21]. The ALJ noted the inconsistencies with Riggins's testimony with other evidence in the record, such as the differing reasons she gave for leaving her job at Rally's; her application for unemployment which required that she assert that she had an ability to work; her activities of daily living, including her satisfactory performance in school; her ability to talk on both her home and cell phone; and her statements regarding her hearing aid use. [R. 20]. Riggins fails to point to any additional portions of her testimony, other than what was discussed in her other arguments, which she believes the ALJ overlooked that would support a finding of disability. The Court finds that the ALJ properly considered the evidence in the record in making his credibility determination and that substantial evidence supports his findings.

## VI. Conclusion

For the reasons set forth above, the Commissioner's decision is **AFFIRMED**.

Dated: 12/30/2011

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Patrick Harold Mulvany
patrick@mulvanylaw.com

SSA (Court Use Only)
SOCIAL SECURITY ADMINISTRATION (SSA) added for
email notification purposes to the SSA General Counsel,
pursuant to A.O. memorandum of 7/19/2007.